UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 17-43 (JDB) |
| RAHMAN SHABAZZ, | |
| Defendant. | |

**MEMORANDUM OPINION & ORDER**

Before the Court is a motion by defendant Rahman Shabazz seeking compassionate release under 18 U.S.C. § 3582(c).  This Court denied his motion in November 2020, but, after a timely appeal, the D.C. Circuit vacated this Court's opinion and remanded the case with instructions to reconsider Mr. Shabazz's motion in light of United States v. Long, 997 F.3d 342 (D.C. Cir. 2021). Considering Mr. Shabazz's motion in accordance with the D.C. Circuit's order, the Court will again deny the motion.

**Background**

Rahman Shabazz is 55 years old and is currently serving a 67-month sentence for racketeering and conspiracy to distribute heroin and cocaine.  He has currently served 46 months of that sentence and, accounting for good time credit, he is set to serve 12 more, with a release date scheduled in September 2022.  See Suppl. to Compassionate Release Mot. ("Suppl. Mot.") [ECF No. 30] at 2–3.  On September 10, 2020, Mr. Shabazz filed the present motion for compassionate release pursuant to 18 U.S.C. § 3582(c), arguing that his need to care for his octogenarian mother constituted an "extraordinary and compelling reason" meriting early release.  See Mot. Pursuant to 18 U.S.C. § 3582(c) for Order Reducing Sentence & Granting Immediate Release or, in the

1

Alternative, Modifying J. to Allow Remainder of Sentence to be Served on Home Confinement ("Original Release Mot.") [ECF No. 17].[1]  On November 24, 2020, this Court denied Mr. Shabazz's motion, finding that his desire to care for his mother, while noble, "d[id] not qualify as an 'extraordinary and compelling reason' for release." United States v. Shabazz, 502 F. Supp. 3d 194, 196 (D.D.C. 2020).  Mr. Shabazz appealed, and, while his appeal was pending, the D.C. Circuit decided United States v. Long, 997 F.3d 342 (D.C. Cir. 2021), which held that U.S. Sentencing Guideline § 1B1.13 is "not applicable to compassionate release motions filed by defendants" and thus is not binding on district courts considering such motions. Id. at 347.  The D.C. Circuit then vacated this Court's denial of Mr. Shabazz's motion, remanding "for further consideration of [Mr. Shabazz's] compassionate release application in light of [Long]." United States v. Shabazz, 848 F. App'x 441, 441 (D.C. Cir. 2021).

On remand, this Court ordered supplemental briefing on Mr. Shabazz's motion.  Min. Order (July 22, 2021).  In his brief, Mr. Shabazz renewed his argument that "[h]is mother's precarious [health] situation" requires "regular care" that only Mr. Shabazz can provide and that this constitutes an "extraordinary and compelling reason" justifying his release. E.g., Suppl. Mot. at 6–7.  Mr. Shabazz's mother, Irene Hunt, is 80 years old and suffers from dementia, gait instability, hypertension, and partial deafness. Id. at 3.  Her condition has "compromis[ed] [her] ambulation," Suppl. Mot. Ex. B [ECF No. 30-2], and she is at a high risk of falling in her home, Suppl. Mot. at 5–6.  In addition, between her dementia and poor balance, she has repeatedly burned herself on the oven or stove while trying to prepare her own food. Id.  Her doctor sums up the

---

[1] Mr. Shabazz also argued for compassionate release on the basis of the COVID-19 pandemic, but, as he had not raised that argument to the Bureau of Prisons, this Court found that he had not exhausted his administrative remedies with respect to those claims.  See United States v. Shabazz, 502 F. Supp. 3d 194, 195–96 (D.D.C. 2020). On remand, defendant has not made any argument relating to the pandemic.

situation with the conclusion that Ms. Hunt's "combination[] of conditions has made it impossible for her to continue living by herself." Suppl. Mot. Ex. B.

Mr. Shabazz argues that Ms. Hunt's condition justifies his early release because he "is the one person who can provide the consistent and regular in-home care that his mother needs." Suppl. Mot. at 12. At present, what care Ms. Hunt receives is provided by Mr. Shabazz's sister, Deborah Rodgers. Id. at 5–6. But Ms. Rodgers lives in South Carolina and is only able to travel to New York every couple of weeks, and defendant argues that, given the kind of care Ms. Hunt requires, these biweekly visits are not sufficient. Id.; see also id. at 9–10. Moreover, Ms. Rodgers is already spread thin, working as a nurse, caring for her disabled granddaughter, and, now, helping her husband recover from recent knee surgery. Id. at 11–12; Suppl. Mot. Ex. A [ECF No. 31-1]. Because Mr. Shabazz is the only person who can provide round-the-clock care for Ms. Hunt's needs, he contends that her "well-being depend[s] on Mr. Shabazz's release," Suppl. Mot. at 6, and that this fact qualifies as an "extraordinary and compelling reason" warranting a sentence reduction under 18 U.S.C. § 3582(c).

The government continues to oppose Mr. Shabazz's motion. The government contends that Mr. Shabazz has "struggled to raise . . . new factual allegations" in his supplemental brief and urges the Court to reject what it calls Mr. Shabazz's "attempt[] to take a second bite at the apple." Gov't's Resp. to Def.'s Suppl. to Compassionate Release Mot. [ECF No. 32] ("Suppl. Resp.") at 2–3. In addition to questioning the seriousness of Ms. Hunt's health problems, see id. at 4, the government also argues that, in light of the efforts of Ms. Rodgers and of Ms. Hunt's neighbors, Mr. Shabazz's release is not needed to provide care for his mother. "Defendant's mother may be living alone," the government submits, "but she certainly is not being neglected." Id. at 3. In short, Mr. Shabazz's desire to care for his mother does not constitute an "extraordinary and

3

compelling reason" for release, according to the government, because "options are available [for Ms. Hunt's care] short of releasing a recidivist and dangerous drug trafficker into the community." Id. at 4.

The parties also dispute whether the factors listed in § 3553(a) favor Mr. Shabazz's release, a necessary consideration before granting compassionate release under 18 U.S.C. § 3582(c). In particular, the parties disagree about whether defendant would pose a danger to the community if released. Mr. Shabazz refers the Court to his largely (though not entirely) clean disciplinary record in prison; the non-violent nature of the crimes for which he was sentenced; and this Court's decision permitting Mr. Shabazz to remain out of custody following his guilty plea. See Suppl. Mot. at 14–16; Suppl. Reply [ECF No. 33] at 4–5. For its part, the government argues that Mr. Shabazz's long criminal history, an earlier violation of probation conditions on a previous charge, and his citation for possession of a cell phone during his current stint of incarceration demonstrate that he "is a danger to the community and has failed to satisfy the § 3553(a) factors." Suppl. Resp. at 6; see also Gov't's Opp'n to Def.'s Mot. for Compassionate Release or Home Confinement [ECF No. 22] at 18–19 (Oct. 16, 2020).

## Analysis

Under the First Step Act of 2018, a court may, upon motion of a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[2] Thus, motions for

---

[2] Defendants must also exhaust their administrative remedies before bringing a motion for compassionate release. See 18 U.S.C. § 3582(c)(1)(A); see generally United States v. Douglas, Crim. No. 10-171-4 (JDB), 2020 WL 5816244, at *1–2 (D.D.C. Sept. 30, 2020). The parties agree that Mr. Shabazz has satisfied this requirement with respect to the claims raised here. See Shabazz, 502 F. Supp. 3d at 195–96.

compassionate release require the court to make "two essential determinations": "whether there are extraordinary and compelling reasons for the reduction," and, if so, "whether, despite the fact that a sentence reduction is warranted, section 3553(a)'s purposes of punishment require maintenance of the original prison term." United States v. Johnson, 464 F. Supp. 3d 22, 30–31 (D.D.C. 2020); see also United States v. Edwards, Crim. A. No. 03-234 (JDB), 2021 WL 3128870, at *4 (D.D.C. July 22, 2021) ("If [defendant] had presented extraordinary and compelling reasons for release, the Court may reduce his term of imprisonment only after considering the § 3553(a) factors."). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Long, Crim. A. No. 10-171-1 (JDB), 2021 WL 3792949, at *1 (D.D.C. Aug. 26, 2021) (quoting United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020)).

      The Court first considers whether Mr. Shabazz's need to care for his ailing, octogenarian mother qualifies as an "extraordinary and compelling reason" warranting release under § 3582. Cutting short a duly authorized prison sentence is, in the statute's own words, an "extraordinary" step to take, and it requires a justification which is more than sympathetic and indeed nothing short of "compelling." Congress has not defined with specificity what satisfies this standard, but it is clear that the bar is exceedingly high. See, e.g., United States v. Winston, No. 1:94-cr-296-11 (RCL), 2021 WL 2592959, at *6 (D.D.C. June 24, 2021) ("Congress did not define the term 'extraordinary,' so the Court takes guidance from the text's plain meaning at the time of enactment. When § 3582 was passed in 1984, 'extraordinary' meant (as it still does today) 'very exceptional.'" (internal citation omitted) (quoting Extraordinary, Webster's II New Riverside Univ. Dictionary (1984)); see also United States v. Hunter, No. 21-1275, 2021 WL 3855665, at *4 (6th Cir. Aug. 30, 2021).

5

The Court finds that Mr. Shabazz does not meet this high bar.  To be clear, the Court fully credits the assertions of Mr. Shabazz, his sister, and Ms. Hunt's doctor with regard to Ms. Hunt's condition.  But Mr. Shabazz has not shown that he is the "only available caregiver" for his mother, nor is his situation so rare as to qualify as "extraordinary."  While the Court is deeply sympathetic with the plight of Mr. Shabazz, his mother, and his sister, this case simply does not present the kind of "extraordinary and compelling" circumstances required to reduce a defendant's sentence under § 3582(c).

To begin, Mr. Shabazz has not shown that his release is the only option for his mother's care.  Close assessment of every alternative to compassionate release is consistent with—if not mandated by—section 3582(c), which reserves compassionate release for only "very exceptional" cases.  See Winston, 2021 WL 2592959, at *6.  The Sentencing Commission's Policy Statement, U.S.S.G. § 1B1.13, incorporates this general principle in its guidance regarding "family circumstances" that can qualify as "extraordinary and compelling."  See, e.g., United States v. Piles, Crim. A. No. 19-292-5 (JDB), 2021 WL 1198019, at *2 (D.D.C. Mar. 30, 2021) ("[The] policy statement suggests that family circumstances should warrant release only in extreme circumstances.").  Though no longer binding for compassionate release motions not brought by the Bureau of Prisons, see Long, 997 F.3d at 355, the Policy Statement remains an important and useful guidepost for courts considering such motions, and the Court sees "no reason to disregard completely the Commission's decades of expertise in assessing the substantive contours of the 'extraordinary and compelling reasons' that might justify release."  United States v. Hicks, Crim. A. No. 93-97-2 (BAH), 2021 WL 1634692, at *4 (D.D.C. Apr. 27, 2021); see also United States v. Johnson, Crim A. No. 02-310 (JDB), 2021 WL 3737681, at *4 (D.D.C. Aug. 24, 2021) ("[T]he criteria in § 1B1.13 still provide persuasive (albeit not binding) authority when considering

defendant-initiated compassionate release motions based on medical conditions, age, or family circumstances." (cleaned up) (internal quotation marks and citation omitted)).

Section 1B1.13 states that "[t]he incapacitation of the defendant's spouse or registered partner" can support compassionate release, but only if "the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 n.1(C)(ii) (emphasis added). Several courts have granted compassionate release due to the health problems of other family members (such as parents), but nearly all of those courts, including many that recognized the Policy Statement as persuasive only, nonetheless placed a premium on whether the defendant was the "only available caregiver." See United States v. Wooten, No. 3:13-cr-18 (SRU), 2020 WL 6119321, at *8 (D. Conn. Oct. 16, 2020) ("Wooten's status vis-à-vis his sister does not, alone, amount to an extraordinary and compelling reason . . . . because he is not technically her only available caregiver."); United States v. Hernandez, No. 16-20091-CR, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (granting compassionate release solely because "Defendant is currently the only potential caregiver for his 84-year-old mother"); United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) ("When a defendant is the 'only available caregiver' for an incapacitated parent . . . then, it is likewise an 'extraordinary and compelling' reason warranting compassionate release."); see also United States v. Moore, Crim. A. No. 14-209-2, 2020 WL 7024245, at *5–6 (E.D. Pa. Nov. 30, 2020) (denying compassionate release because "[defendant] does not adduce evidence to find he is the only available caregiver for his mother" and noting that "courts [have] denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the sole individual capable of caring for the parent").

7

In this case, Mr. Shabazz does not appear to be his mother's only available caregiver.[3] Ms. Hunt's current (though intermittent) caregiver, defendant's sister Deborah Rodgers, has not stopped caring for Ms. Hunt nor has she indicated any intention to do so. In her own words: "I am not refusing to care for my mother, I am just asking for some help." Suppl. Mot. Ex. A at 2. Moreover, Ms. Rodgers informed the Court that she "ha[s] someone in the building [who can] check on [Ms. Hunt]." Id. at 1. Lastly, although defendant has represented that neither Ms. Hunt nor Ms. Rodgers "have the [financial] resources to employ" an in-home nurse, the Court does not read defendant's submissions to completely rule out some sort of outside help with Ms. Hunt's care. See Suppl. Mot. at 13; see also Shabazz, 502 F. Supp. 3d at 198 ("Nor has Shabazz demonstrated that his mother is ineligible for home healthcare assistance—he merely says that she was not eligible in 2017 . . . .").

Mr. Shabazz argues that, due to Ms. Hunt's gait instability and worsening dementia, she requires "constant care" that Ms. Rodgers simply cannot provide from South Carolina, e.g., Suppl. Mot. at 11, and defendant therefore is the only available caregiver who can provide his mother round-the-clock attention and care, id. at 12.[4] There is logic in this argument, but it does not change the result of the Court's analysis. For one, the evidence before the Court does not establish

---

[3] Indeed, defendant comes close to conceding that he is not his mother's only available caregiver in his supplemental brief: "U.S.S.G. § 1B1.13 requires defendants seeking compassionate release on the grounds of familial need to establish that they are the only available caregiver. But because Section 1B1.13 does not apply to Mr. Shabazz's motion," he need not "establish that he is the only available caregiver for Ms. Hunt." Suppl. Mot. at 11.

[4] At the outset, the Court notes that this argument presumes that Mr. Shabazz will not obtain employment after release—were he to work an ordinary job, he would hardly be able to provide the "constant care" envisioned by his motion. Post-release employment is an important aspect of a defendant's release plan. See, e.g., United States v. Polnett, Case No. CR11-5080RJB, 2021 WL 4169173, at *2 (W.D. Wash. Sept. 13, 2021) (noting that defendant "presents an adequate release plan and an excellent chance for good employment"); United States v. Jones, Case No. 7:11CR00039-006, 2021 WL 3630459, at *3 (W.D. Va. Aug. 17, 2021) (noting that defendant "prepared a detailed and well-thought-out release plan and has employment waiting for him upon his release"); cf. 28 C.F.R. § 571.61 (requiring that an inmate's request to BOP for compassionate release include "proposed release plans, including . . . how the inmate will support himself/herself"). That Mr. Shabazz's release plan, such as it is, not only does not include this information but affirmatively contemplates him remaining jobless makes the Court reluctant to authorize his release.

the absolute necessity that Ms. Hunt have a live-in caregiver. Her doctor's letter is short and undetailed, simply stating his conclusion that Ms. Hunt's "conditions ha[ve] made it impossible for her to continue living by herself." Suppl. Mot. Ex. B. Mr. Shabazz also relies on Ms. Hunt's "serious risk of injury from falling or burning herself as she tries to take care of her daily tasks," a risk he claims would be reduced if someone lived with her. Suppl. Mot. at 7. But live-in care would not entirely eliminate this risk, see id. 10 ("[I]f someone is there reminding Ms. Hunt to use her walker and be careful, she is much more likely to use it."), and the status quo is not totally ineffective at mitigating this danger. Having someone in the house may be better than intermittent visits and check-in calls, but, on the present record, the Court is not prepared to accept defendant's premise that anything short of round-the-clock, in-home care is equivalent to no care at all.

And even if it was uncontested that Ms. Hunt must not be left alone, other options remain, including having her move in with Ms. Rodgers in South Carolina. Presumably responding to the Court's previous comment that he "ha[d] presented no evidence that . . . his mother could not move closer to her daughter," Shabazz, 502 F. Supp. 3d at 198, Mr. Shabazz posits that moving Ms. Hunt is not in fact a real possibility. In support, he relies on a scholarly article indicating that "relocation of elderly people with dementia can 'lead to negative effects on a physical, psychological, and/or social dimension in the patient's life,'" Suppl. Mot. at 12 (quoting Suppl. Mot. Ex. C [ECF No. 30-3] at 7), and he points to Ms. Hunt's clear insistence on continuing to live in New York, see id. at 12–13. But, as the government correctly notes, three studies discussed in the article produced "moderately conflicting results," see Suppl. Resp. at 4 (quoting Suppl. Mot. Ex. C at 7), and the article does not categorically rule out relocating of dementia patients, instead urging decisionmakers to "balance the possible positive and negative effects on [a] patient's physical and mental health and well-being," id. (quoting Suppl. Mot. Ex. C at 9).

9

Both parties make valid points: forcibly relocating Ms. Hunt to South Carolina may not be a perfect solution, but the evidence before the Court does not suggest that Ms. Hunt is certain to suffer serious negative consequences if she moves in with her daughter. And while of course it is not the Court's place to tell Mr. Shabazz or his family how to make difficult decisions regarding Ms. Hunt's health, it seems that Ms. Hunt moving to South Carolina is one of many possible courses of action, all of which have drawbacks. That relocation is possible (even if not ideal) undermines Mr. Shabazz's argument that his release is so necessary to Ms. Hunt's care as to constitute an extraordinary and compelling reason warranting a sentence reduction.

The parties also dispute whether the present situation is so rare that it qualifies as "extraordinary." Compare Suppl. Mot. at 13–14, with Suppl. Resp. at 4–5. The Court generally agrees with the government: making difficult decisions regarding the care of an elderly parent is, though difficult, far from an "extraordinary" or "very exceptional" hardship. As the government put it, "[t]hese are issues elderly parents and their children face every day." Suppl. Resp. at 5; see also United States v. Ingram, Case No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."). Defendant counters that, given the paucity of middle-aged inmates in federal prison and the likelihood that most inmates would have family members who could care for an elderly parent, "rare will be the case like this one." Suppl. Mot. at 14; accord Suppl. Reply at 4. That may very well be true, so far as it goes. But in the Court's view, the entire population—not just the subset of federal inmates—is the appropriate point of reference for determining whether a situation is so rare as to be "extraordinary." Mr. Shabazz's attempt to limit who counts when assessing a situation's "extraordinariness" is contrary both to good sense and to § 3582(c)'s limitation of compassionate release to truly exceptional situations.

Defendant also points to four cases from other Districts in which a defendant was released in order to serve as the caregiver for an elderly parent. See Suppl. Mot. at 10–11. To the extent that these cases show that the need to care for a parent can constitute an "extraordinary and compelling reason" for release, the Court entirely agrees. But these cases do little to show that Mr. Shabazz has demonstrated such a reason. As noted above, two of these decisions, Hernandez and Bucci, were based exclusively on a finding that the defendant was the only available caregiver, a showing Mr. Shabazz has failed to make here. And Wooten, which did find an extraordinary and compelling reason despite the availability of other caregivers, explicitly relied on additional facts not present here, including that the defendant had a perfect disciplinary record in prison, evinced a "total" rehabilitation, and had already "served the carceral sentence that [the judge] (likely) would have imposed" had it not been for a statutory mandatory minimum. See Wooten, 2020 WL 6119321, at *8.[5] Compassionate release decisions "require a fact-intensive inquiry," United States v. Kibble, No. CR 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citation and quotation marks omitted), aff'd 992 F.3d 326 (4th Cir. 2021) (per curiam), and the cases cited by defendant provide minimal specific support for Mr. Shabazz's request.In its prior opinion denying Mr. Shabazz's motion for compassionate release, this Court concluded that, even without considering the Policy Statement to be binding, Mr. Shabazz had still "failed to establish that his need to care for his mother is extraordinary and compelling." Shabazz, 502 F. Supp. 3d at 197. Accordingly, the Court is reluctant to change course without a showing of a substantial change in circumstances. Cf., e.g., Banks v. Booth, 518 F. Supp. 3d 57, 62 (D.D.C. 2021) (noting that reconsideration may be appropriate "where a controlling or significant change in the facts has

---

[5] The fourth case defendant cites, United States v. Walker, Case No. 1:11 CR 270, 2019 WL 5268752 (N.D. Ohio Oct. 17, 2019), involved such idiosyncratic circumstances—the defendant was offered a lucrative position as a producer on the film adaptation of his bestselling novel, which would permit him to pay for his mother's expensive cancer treatments—that it offers little guidance for the present situation. Id. at *2–3.

11

occurred since the submission of the issue to the court" (cleaned up) (citation omitted)); United States v. Smith, 200 F. Supp. 3d 192, 194 (D.D.C. 2016) (declining to reconsider pre-trial detention decision without evidence of a clear error of law or changed circumstances). While Mr. Shabazz's supplemental briefing does identify certain new developments, none are so significant as to change the outcome of the Court's analysis.

Mr. Shabazz claims that his mother's "situation has become much more precarious since September 10, 2020, and she needs Mr. Shabazz's assistance more than ever." Suppl. Mot. at 7. But beyond certain anecdotes regarding Ms. Hunt burning herself on her stove and a risk of falling due to her gait instability, see id. at 7, 8, 10 n.5, he has provided no new medical evidence suggesting a decline in Ms. Hunt's condition, submitting instead the same doctor's letter from his initial motion. See Suppl. Mot. Ex. B; Suppl. Mot. at 5 n.4. Another change in the relevant circumstances is Ms. Rodgers's new responsibility to care for her husband, who recently underwent knee surgery. See Suppl. Mot. at 6, 12; Suppl. Mot. Ex. A at 1. But it is not clear what this new caregiving burden entails or how long it will last, see Suppl. Resp. at 3 ("There is no evidence that helping her husband following knee surgery is anything but temporary."), and, although the Court recognizes that this adds one more task to Ms. Rodgers's already-full plate, that fact is of limited relevance to Mr. Shabazz's motion for release when it is clear that Ms. Rodgers is still able to care for her mother.

The final difference from when this Court previously ruled is that Mr. Shabazz has now served a greater proportion of his sentence—accounting for good-time credit, he reports that he has completed 80 percent of his sentence. See Suppl. Mot. at 14–15. This fact is undoubtedly relevant to the compassionate release analysis, and specifically to whether release would be consistent with the § 3553 factors. See 18 U.S.C. § 3553(a)(2)(A) (requiring a court to consider

"the need for the sentence imposed to reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense"); see also Long, 2021 WL 3792949, at *2 (denying compassionate release in part because "reducing [the defendant's] sentence by more than half now would undermine at least two of the sentencing objectives identified in § 3553(a)(2)"). But simply having served a substantial portion of one's sentence cannot, standing alone, justify compassionate release, and it certainly cannot constitute an "extraordinary and compelling" circumstance justifying sentence reduction.

This is a close case, and the Court recognizes that Mr. Shabazz and his family are in an unenviable position. But given the exceedingly high bar for compassionate release and the absence of any change in circumstances undermining this Court's prior decision, the Court concludes that Mr. Shabazz still has not presented an "extraordinary and compelling reason" justifying his early release from prison. Incarceration imposes costs on the inmate as well as on his family, and a defendant's inability to spend time with and care for an elderly parent, including any accompanying added burden on family members, is one of the more poignant hardships resulting from imprisonment. Compassionate release is a mechanism built on the recognition that some consequences of incarceration are so serious as to justify release, and, as acknowledged above, the need to care for an ailing parent can fall into that category. But this mechanism is for only the most exceptional cases. Put simply, this is not such a case. Although the failing health of Ms. Hunt has put Mr. Shabazz and his family in a difficult situation, it does not constitute an "extraordinary and compelling reason" justifying a reduction in his sentence.[6]

---

[6] This holding also applies to defendant's alternative request for home confinement. As the Court noted in its previous opinion, the only way for the Court to order home confinement is to reduce Mr. Shabazz's sentence under § 3582(c) and then to impose a home confinement condition as part of his supervised release. See Shabazz, 502 F. Supp. 3d at 199–200. The Court understands defendant's submissions to account for this holding, see Suppl. Mot. at

In light of this conclusion, it is not strictly necessary to weigh the § 3553(a) factors—an inmate may not be granted compassionate release without a finding of an extraordinary and compelling reason, no matter how the § 3553(a) factors shake out. See, e.g., Long, 2021 WL 3792949, at *1 (discussing the § 3553(a) factors only after "assuming arguendo that Long's medical conditions alone might otherwise support finding an 'extraordinary and compelling' reason to release him"); Johnson, 464 F. Supp. 3d at 30–31 (noting that the § 3553(a) factors need only be considered after finding an "extraordinary and compelling reason"). However, since Mr. Shabazz devoted a substantial amount of his briefing to whether he would pose a "danger to the community" if released, see Suppl. Mot. at 14–16; see also Suppl. Resp. at 6, it is nonetheless worth briefly addressing the § 3553(a) factors.

The Court stands by its earlier opinion on this question: the § 3553(a) factors still weigh against Mr. Shabazz's release. See Shabazz, 502 F. Supp. 3d at 198–99. Courts must consider a variety of factors when determining whether to grant a motion for compassionate release, including "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" and the need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(1)–(2).

Mr. Shabazz is currently serving a 67-month sentence for conspiracy to distribute and possess heroin and cocaine and for a racketeering conspiracy in which Mr. Shabazz delivered narcotics to a corrections officer to be smuggled into a prison. See Shabazz, 502 F. Supp. 3d at

---

16; Suppl. Reply at 4, but because Mr. Shabazz's motion fails at the threshold "extraordinary and compelling reason" stage, he is not eligible for release, with or without a home confinement condition.

198. These are without doubt serious offenses, a fact reflected by Mr. Shabazz's substantial prison term. Moreover, this was not Mr. Shabazz's first brush with the law: his criminal record dates back to the early 1990s and includes two prior felony narcotics convictions and two convictions related to firearms. Id.; see generally Presentence Investigation Report ("PSIR") [ECF 8] at 19–26. Mr. Shabazz's criminal record and the seriousness of his offenses militate against his release.

In addition, the Court finds that Mr. Shabazz presents a threat to recidivate. His long history of involvement with narcotics distribution is indicative of a tendency to fall into old patterns; more specifically, in 2005 he committed a new drug offense while on probation for a 2004 drug conviction, triggering the revocation of his probation and an eight-and-a-half-year prison sentence. See Shabazz, 502 F. Supp. 3d at 198; PSIR at 21–24. For his part, Mr. Shabazz points to his compliance with his pre-trial and post-plea release conditions in 2016 and 2017, see Suppl. Mot. at 15–16, but the Court continues to believe that "[o]ne short period of compliance is not sufficient to overcome" his history of non-compliance and recidivism, Shabazz, 502 F. Supp. 3d at 199.

Moreover, Mr. Shabazz does not have a completely clean record during his current term of incarceration: in 2019, he was cited for possession of a "hazardous tool" (a cell phone, Mr. Shabazz has explained). Id.; see also Suppl. Mot. at 15. Though Mr. Shabazz seeks to paint this as a minor infraction, see Suppl. Mot. at 15, it resulted in serious punishment—30 days of disciplinary segregation, a loss of 41 days of good time credit, and disqualification from home confinement, see Shabazz, 502 F. Supp. 3d at 199; Original Release Mot. Ex. D [ECF No. 17-4]—and the Court notes that possession of a cell phone might constitute a more serious offense for an inmate convicted of conspiracy to smuggle drugs into a prison. In addition, neither Mr. Shabazz's original motion nor his supplemental brief present any evidence of rehabilitation while in prison. Cf.

15

Wooten, 2020 WL 6119321, at *8 (granting compassionate release to care for a family member in part because defendant evinced a "total" rehabilitation).

In his supplemental briefing on this point, Mr. Shabazz relies heavily on this Court's 2017 finding that Mr. Shabazz "[was] not likely to . . . pose a danger to the safety of any other person or the community if released" following his guilty plea. 18 U.S.C. § 3143(a); see Suppl. Mot. at 14–15; Suppl. Reply at 4. This, he suggests, means that he "does not present a risk of danger to the community" if released now. Suppl. Mot. at 14. But compassionate release requires an entirely different analysis from post-plea release under § 3143(a). Whereas § 3143(a) only requires the Court to consider the defendant's risk of flight and the general "danger" he would pose, § 3582(c) calls for consideration of a much broader range of factors. See 18 U.S.C. § 3582(c)(1)(A)(i). And although the "need for the sentence imposed . . . to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C), may resemble § 3143's "dangerousness" inquiry, they clearly ask different questions, with the former focusing on recidivism ("further crimes") and the latter on the "danger" posed to the community or another person.[7] In addition, a few months of post-plea release is a far different proposition than a permanent sentence reduction pursuant to § 3582(c). At the very least, then, a prior favorable decision under § 3143(a) does not compel a finding in favor of defendant under §3553(a)(2)(C), and it certainly is not dispositive of defendant's motion for compassionate release.

In short, the Court remains convinced that Mr. Shabazz's sentence of 67 months—which, it bears mentioning, was at the low end of the Guidelines range and took into account both his mother's health problems as well as his conduct on post-plea release, see Shabazz, 502 F. Supp.

---

[7] Moreover, the Court continues to believe, as it noted in its prior opinion, that just because a defendant was convicted of non-violent offenses does not mean he cannot present a danger to the community if released. See Shabazz, 502 F. Supp. 3d at 199 (collecting cases).

3d at 198; PSIR at 27—is necessary to reflect the seriousness of his offense, to provide just punishment, and to protect the public from further crimes. This finding, in combination with the Court's conclusion that Mr. Shabazz has not put forward an "extraordinary and compelling reason" warranting sentence reduction, requires the Court to deny Mr. Shabazz's motion for compassionate release.

*   *   *   *   *

For the foregoing reasons, and upon consideration of [17] defendant's motion for compassionate release and [30] the supplement to his motion, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated: September 22, 2021